UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SUCCESS ACADEMY CHARTER SCHOOLS–NYC,

Plaintiff,

v.

BETTY A. ROSA, in her official capacity as Commissioner of Education of the State of New York,

Defendant.

26 Civ. 7298 (JMF)

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND REQUEST PURSUANT TO FED. R. CIV. P. 65(a)(2)**

LAW OFFICES OF ERIC J. GRANNIS
11 Broadway, Suite 615
New York, New York 10004
(212) 903-1025
egrannis@grannislaw.com

Attorney for Plaintiff

# TABLE OF CONTENTS


**PRELIMINARY STATEMENT** 1

**FACTUAL BACKGROUND** 5

I. Success Academy Uses AP Examinations as an Independent Measure of Academic Achievement. 5

II. U.S. News Uses AP Data Supplied Independently by the College Board Rather Than School Self-Reporting. 6

III. Success's 2022 Experience Demonstrates That Post-Publication Changes Are Possible. 6

IV. New York Prevented the College Board From Supplying the Relevant AP Data for the Current Ranking Cycle. 7

V. NYSED's Public Website Is Not a Substitute for the AP Data U.S. News Requires from the College Board. 8

VI. U.S. News Publicly Rejected NYSED's Characterization of Its Request as Seeking Individual Student Data. 9

VII. New York's Action Has Caused and Continues to Cause Concrete Injury. 9

**ARGUMENT** 10

I. SUCCESS SATISFIES THE STANDARD FOR PRELIMINARY INJUNCTIVE RELIEF. 10

II. SUCCESS HAS ARTICLE III STANDING. 11

III. SUCCESS IS CLEARLY LIKELY TO SUCCEED ON ITS FIRST AMENDMENT CLAIM. 12

A. Disseminating Success's AP Results Is Protected Speech. 12

B. This Is Not a Claim for a Constitutional Right of Access to Government Data. 13

C. New York Cannot Escape First Amendment Scrutiny by Directing Its Restriction at Success's Necessary Intermediary. 13

D. The First Amendment Protects the Communication's Recipients as Well as Its Speaker. 14

E. NYSED's Restriction Warrants Heightened Scrutiny. 15

F. Student Privacy Does Not Justify Suppression of Aggregate, Non-Identifying Information. 15

G. NYSED's Public Website Is Not an Alternative Means of Making the Communication U.S. News Requires. 16

H. The IB Treatment Further Undermines the Claimed Need for a Categorical Prohibition. 17

I. The Restriction Fails Even Under Central Hudson. 18

IV. SUCCESS IS SUFFERING IRREPARABLE HARM. 18

V. THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST FAVOR AN INJUNCTION. 19

VI. IF THE RECORD IS COMPLETE, THE COURT SHOULD ADVANCE AND CONSOLIDATE THE MERITS PURSUANT TO RULE 65(a)(2). 20

VII. NO BOND SHOULD BE REQUIRED. 21

**CONCLUSION** 22

# TABLE OF AUTHORITIES

**Cases**


*Winter v. Natural Resources Defense Council, Inc.* 10
*New York Progress & Protection PAC v. Walsh* 10
*North American Soccer League, LLC v. U.S. Soccer Federation, Inc.* 10
*Bronx Household of Faith v. Board of Education* 10, 18
*Lujan v. Defenders of Wildlife* 12
*Sorrell v. IMS Health Inc.* 12, 15
*Los Angeles Police Department v. United Reporting Publishing Corp.* 13
*Meyer v. Grant* 14, 17
*Bantam Books, Inc. v. Sullivan* 14
*National Rifle Association of America v. Vullo* 14
*Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.* 14
*Central Hudson Gas & Electric Corp. v. Public Service Commission* 18
*Elrod v. Burns* 18
*University of Texas v. Camenisch* 20
*Abraham Zion Corp. v. Lebow* 20
*Mullins v. City of New York* 21
*Doctor's Associates, Inc. v. Stuart* 21


**Statutes and Rules**


N.Y. Educ. Law § 2-d 15
Fed. R. Civ. P. 65 20, 21, 22

## PRELIMINARY STATEMENT

This case concerns something much more important than a school's place on a ranking list. It concerns Success Academy's right to tell the public what its students have actually accomplished.

Success Academy has built its high-school program around a demanding proposition: students should be given the opportunity to do genuinely advanced academic work, and their achievement should be measured against standards that the school itself does not control. Advanced Placement examinations provide exactly that measure. Success Academy does not write the AP examinations. It does not score them. It cannot lower their standards. The College Board administers the examinations nationally and determines whether students have mastered the material.

Success Academy's students have responded to that challenge with extraordinary results. Among the Class of 2026, 95 percent graduated having earned passing scores on at least three AP examinations; 79 percent passed at least five; and 60 percent passed seven or more. During the most recent examination year, more than 3,000 Success Academy students sat for 7,810 AP examinations across 18 subjects. *See* Declaration of Lisa Sun ("Sun Decl.") ¶¶ 5–7.

Those results matter profoundly to Success Academy because they say something Success cannot credibly say merely by praising itself. They permit Success to tell parents, colleges, educators, journalists, and the public: Do not take our word for it. Our students have been tested against a demanding national standard that we did not create, and this is how they performed.

New York State has prevented Success from delivering that message through the one source capable of authenticating it for the intended recipient.

U.S. News & World Report has long used AP participation and performance in its nationally followed high-school rankings. U.S. News does not simply accept AP numbers supplied by individual schools. It obtains the relevant information through the College Board—the organization that administers the examinations and maintains the authoritative records. Success affirmatively

wants the College Board to transmit its information. U.S. News wants to receive the information. The College Board possesses it and historically has transmitted it.

The State has placed itself in the middle and stopped the communication.

NYSED acknowledges the essential facts. The College Board asked NYSED to authorize transmission of AP information to U.S. News for the current ranking cycle. NYSED declined. NYSED then asked the College Board whether the information already available on the State's public website could satisfy U.S. News's needs. The College Board told NYSED it could not. The College Board explained that U.S. News uses a separate College Board cohort file—a "completely different data set"—that the College Board would transmit only with New York's permission. *See* Declaration of Ann Powell ("Powell Decl.") ¶¶ 10–12 & Ex. C.

What followed was predictable. The College Board did not transmit the AP information. U.S. News did not use New York schools' AP participation and performance in the relevant portions of its methodology. One of the strongest external indicators of Success Academy's academic program simply disappeared from the ranking.

The consequences were dramatic. In the preceding ranking cycle, when Success's AP performance was included, Success ranked 11th among high schools in New York State and 9th in New York City. In the current rankings, after the AP information vanished, Success fell to approximately 196th statewide. *See* Declaration of Eva Moskowitz ("Moskowitz Decl.") ¶¶ 11–13.

Nothing comparable happened to Success Academy's students. They did not suddenly become weaker students. Success did not abandon its rigorous curriculum. Its AP program did not collapse. To the contrary, its students' AP performance remained exceptional.

What disappeared was the proof.

That is why the constitutional injury matters independently of whether any particular numerical ranking is "correct." Success is entitled to communicate truthful information about its own program and its students' accomplishments. And it is entitled to make that communication in the

form that gives it its particular meaning: independently authenticated information transmitted through the organization that administers the national standard.

The State cannot answer that Success remains free to issue a press release boasting about its AP scores. That is not the same communication. U.S. News requires independent authentication. Success cannot substitute its own assertion for the College Board's verification any more than a litigant can substitute its own description of a laboratory result for the laboratory report itself.

History proves the point.

In 2022, Ann Powell was personally involved in Success Academy's efforts to address an issue concerning whether its AP information was being properly reflected by U.S. News. On July 9, 2022, Powell reviewed Success Academy's U.S. News school page and observed that it listed Success as No. 233 nationally, No. 26 in New York State, and No. 16 among New York City public high schools. Powell Decl. ¶¶ 4–6 & Ex. A.

Powell also reviewed the New York State ranking list and observed that Success was listed at No. 26 while another school also remained listed at No. 26. Powell Decl. ¶¶ 7–8 & Ex. B. Powell's contemporaneous screenshots reflect those displays. Id.

In Powell's experience, the 2022 episode demonstrates that correcting the flow of AP information after publication can still produce a change in the information U.S. News presents publicly. Id. ¶ 9.

That history shows that post-publication relief can remain meaningful.

The State has attempted to justify its prohibition in the name of student privacy. Success agrees completely that individual student information must be protected. But that is not what this lawsuit seeks. U.S. News publicly stated on September 3 that NYSED's characterization of its request as seeking individual student-level information was "categorically false" and that it had requested aggregate school-level information. Powell Decl. ¶¶ 13–14 & Ex. D.

Success seeks no student names. No addresses. No individual score reports. No information that identifies a student. It seeks only the aggregate, non-personally-identifying information necessary to communicate what its students collectively achieved.

Nor does NYSED's public website provide a meaningful substitute. NYSED itself asked the College Board whether those public data would work. The College Board said no. NYSED's own briefing now lists among its "next steps" determining why its public AP data were insufficient for U.S. News's purposes. Powell Decl. ¶¶ 10–12 & Ex. C.

Thus this is not a dispute about forcing New York to disclose government information. Success seeks no access to a government database. It asks the State to stop preventing a private testing organization from transmitting Success's own authorized, authenticated, aggregate academic information to a willing recipient.

Nor does Success ask this Court to order U.S. News to rank Success highly—or to rank it at all. U.S. News remains completely free to choose its methodology, assign whatever weight it wants to AP performance, revise or not revise its current ranking, or abandon high-school rankings altogether.

The requested relief is much narrower.

Success asks the Court to remove New York's veto from a truthful communication among willing private parties.

The First Amendment requires no less.

## FACTUAL BACKGROUND

### I. Success Academy Uses AP Examinations as an Independent Measure of Academic Achievement.

Success Academy operates public charter schools in New York City and has made rigorous academic preparation and college readiness central features of its high-school program. Moskowitz Decl. ¶¶ 2–5.

Success's educational model rests in substantial part on the conviction that demanding academic opportunities should be broadly available and that educators should not underestimate what students can accomplish. *Id.* ¶¶ 3–5.

Advanced Placement courses are important to that model because they permit students to undertake college-level work while still in high school. AP examinations then measure that work against an external national standard.

Success does not write the exams, establish their scoring thresholds, or grade them. The College Board does. Sun Decl. ¶¶ 3–4.

That independence gives AP results special significance. When Success publicizes those results, it is not merely expressing an opinion that its program is rigorous. It can point to performance measured against a standard independent of Success itself.

The results have been substantial. Among Success Academy's Class of 2026, 95 percent graduated having passed at least three AP examinations; 79 percent passed at least five; and 60 percent passed at least seven. More than 3,000 Success students took 7,810 AP examinations across 18 subjects in the most recent year, with an overall pass rate of approximately 68 percent. Sun Decl. ¶¶ 5–7.

Success therefore has an obvious and longstanding interest in making those results known. Moskowitz Decl. ¶¶ 6–9.

## II. U.S. News Uses AP Data Supplied Independently by the College Board Rather Than School Self-Reporting.

U.S. News publishes nationally disseminated high-school rankings. Among other things, its methodology has historically used AP participation and performance in measuring college readiness and curriculum breadth.

U.S. News does not simply accept whatever AP numbers an individual school chooses to report. The College Board administers the AP program and maintains the authoritative examination

records. U.S. News therefore relies on AP data supplied by the College Board for the relevant measures. Powell Decl. ¶¶ 11–12, 15 & Ex. C.

That arrangement has practical consequences. Success cannot solve a failed transmission by the College Board simply by sending U.S. News its own spreadsheet. That would eliminate the independent authentication U.S. News requires.

The College Board therefore serves as the necessary conduit for the particular communication Success seeks to make: Success's AP achievement, authenticated by the organization that administered the examinations.

## III. Success's 2022 Experience Demonstrates That Post-Publication Changes Are Possible.

Success's prior experience demonstrates that publication of a ranking does not necessarily make later correction impossible.

In 2022, Powell was personally involved in Success Academy's efforts to address an issue concerning whether its AP information was being properly reflected by U.S. News. Powell Decl. ¶¶ 4–5.

On July 9, 2022, Powell personally reviewed Success Academy's U.S. News school page. It displayed Success Academy as ranked No. 233 nationally, No. 26 in New York State, and No. 16 among New York City public high schools. Powell Decl. ¶ 6 & Ex. A.

Powell also reviewed the New York State ranking list. That list displayed Success Academy at No. 26 and also displayed City Honors School at Fosdick Masten Park at No. 26. Powell Decl. ¶¶ 7–8 & Ex. B.

Powell's experience with that episode demonstrates that correcting the flow of AP information after publication can still produce a change to the information U.S. News presents publicly. Powell Decl. ¶ 9. The 2022 experience therefore provides concrete evidence that post-publication relief can remain meaningful.

## IV. New York Prevented the College Board From Supplying the Relevant AP Data for the Current Ranking Cycle.

For the current ranking cycle, the College Board again sought New York's authorization to provide AP information to U.S. News.

This time NYSED declined.

NYSED has publicly documented the sequence. Its own briefing states that the College Board asked NYSED earlier in 2026 to authorize use of AP data for the U.S. News rankings. NYSED did not provide that authorization. Powell Decl. ¶¶ 10–12 & Ex. C.

NYSED then explored whether U.S. News could obtain what it needed from information already available on NYSED's public website.

NYSED asked the College Board that precise question.

The College Board said no.

According to NYSED itself, the College Board explained that U.S. News relies on a separate College Board cohort data file; the College Board described that file as a "completely different data set" and told NYSED that it would share the file only with NYSED's permission. *Id.*

The causal chain is therefore unusually direct: NYSED withheld authorization; the College Board did not transmit the required AP data; and U.S. News consequently calculated the relevant New York measures without the AP participation and performance information it historically used.

## V. NYSED's Public Website Is Not a Substitute for the AP Data U.S. News Requires from the College Board.

NYSED repeatedly emphasizes that it continues to publish AP information on its own website.

That is true, but it does not answer the issue in this case.

NYSED publishes some AP participation and performance information. The relevant question is whether the State's public material provides a complete, accurate and usable substitute for the College Board cohort dataset that U.S. News actually uses.

It does not.

Again, Defendant's own account establishes the point. NYSED asked the College Board whether its public information would meet U.S. News's needs. The College Board said it would not and explained that U.S. News uses a "completely different" College Board cohort dataset. Powell Decl. ¶¶ 10–12 & Ex. C.

Most importantly, NYSED effectively concedes that its website does not solve the problem. Among the "next steps" identified in its own briefing is to "[e]xplore why NYSED's publicly available AP data were insufficient for U.S. News & World Report's purposes." Powell Decl. ¶ 12 & Ex. C.

The State thus simultaneously argues that public AP information remains available and acknowledges that the intended recipient cannot use that public information as a substitute for the data New York prevented the College Board from transmitting.

That is not an adequate alternative channel.

## VI. U.S. News Publicly Rejected NYSED's Characterization of Its Request as Seeking Individual Student Data.

NYSED has justified its refusal largely by invoking student privacy and Education Law § 2-d.

On September 3, 2026, U.S. News publicly responded.

It stated that NYSED had characterized its request as an attempt to obtain protected individual student-level data and declared that characterization "categorically false." U.S. News said that no individual student data had been requested and that the request was for aggregate school-level information necessary to ensure the accuracy and comparability of its rankings. Powell Decl. ¶¶ 13–14 & Ex. D.

Success seeks precisely that kind of relief.

It does not ask this Court to order disclosure of student names, addresses, individual score reports, or other personally identifying information. Moskowitz Decl. ¶¶ 16–17.

Success affirmatively consents to transmission of its aggregate AP participation and performance information. *Id.*

**VII. New York's Action Has Caused and Continues to Cause Concrete Injury.**

In the ranking cycle immediately preceding the challenged refusal, when AP participation and performance were included, Success ranked 11th among high schools in New York State and 9th in New York City. Moskowitz Decl. ¶ 11.

After the AP information disappeared from the current ranking methodology, Success's statewide ranking fell to approximately 196th. *Id.* ¶ 12.

Success does not contend that U.S. News rankings are a perfect measure of educational quality, or that every position in that movement is necessarily attributable to a single methodological variable.

But AP participation and performance were among Success's strongest objective measures of academic rigor. Their complete omission necessarily caused U.S. News to describe Success without information that U.S. News itself historically regarded as important to college readiness and curriculum breadth.

The current ranking is public now. Families can see it now. Students can see it now. Journalists, educators, prospective employees, donors, colleges, and members of the public can encounter it now. Moskowitz Decl. ¶¶ 10–15.

More fundamentally, the State continues now to prevent Success from making the authenticated communication it wishes to make.

The injury therefore is continuing regardless of whether U.S. News ultimately elects to revise this year's numerical ranking.

## ARGUMENT

### I. SUCCESS SATISFIES THE STANDARD FOR PRELIMINARY INJUNCTIVE RELIEF.

A preliminary injunction requires irreparable harm, likelihood of success on the merits, consideration of the balance of equities, and consistency with the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *New York Progress & Protection PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013).

Where an injunction alters rather than preserves the status quo, the Second Circuit generally requires a "clear" or "substantial" likelihood of success. *North American Soccer League, LLC v. U.S. Soccer Federation, Inc.*, 883 F.3d 32, 36–37 (2d Cir. 2018); *Bronx Household of Faith v. Board of Education*, 331 F.3d 342, 349 (2d Cir. 2003).

There is a substantial argument that the relief requested here restores rather than alters the historical relationship. For years Success wanted its AP information transmitted, the College Board transmitted authenticated information, and U.S. News used it. New York's current refusal disrupted that established process.

The Court need not resolve that characterization, however, because Success satisfies the heightened standard.

The dispositive facts are established principally through Defendant's own public admissions, U.S. News's public statement, Powell's firsthand testimony, and contemporaneous screenshots of the 2022 U.S. News website. And the First Amendment principles governing the dispute are well established.

### II. SUCCESS HAS ARTICLE III STANDING.

Success has at least two concrete injuries.

First, New York presently prevents Success from making a truthful, authenticated communication concerning its own educational program through the conduit necessary for the communication to reach its intended recipient in the form that recipient accepts.

That expressive injury exists independently of the precise numerical ranking U.S. News assigns Success.

Second, the State-created omission has concrete reputational consequences because the current publicly available U.S. News profile evaluates Success without one of its strongest external measures of academic rigor.

Both injuries are traceable directly to Defendant.

NYSED admits that the College Board sought permission to transmit the relevant information; that NYSED did not provide it; that the College Board said it would transmit the cohort file only with NYSED permission; and that NYSED's public data were insufficient for U.S. News's purposes. Powell Decl. ¶¶ 10–12 & Ex. C.

The injuries are also redressable.

An injunction removes the exact governmental barrier preventing the speech. Success does not need to establish that this Court can compel U.S. News to revise its rankings. Success seeks no order against U.S. News.

Once New York's prohibition is removed, Success again may communicate through the College Board.

The historical record further demonstrates that meaningful post-publication relief is not merely theoretical. Powell's 2022 experience demonstrates that correcting the flow of AP information after publication can still produce a change to the information U.S. News presents publicly. Powell Decl. ¶ 9 & Exs. A–B. Success need not establish that U.S. News will necessarily make such a change in 2026; the injunction itself redresses the ongoing governmental barrier to Success's communication.

This case therefore differs fundamentally from one in which redressability depends upon speculation about how unrelated third parties might behave. *Cf.* *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62 (1992).

## III. SUCCESS IS CLEARLY LIKELY TO SUCCEED ON ITS FIRST AMENDMENT CLAIM.

### A. Disseminating Success's AP Results Is Protected Speech.

The Supreme Court has squarely held that "the creation and dissemination of information are speech within the meaning of the First Amendment." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011).

AP participation and examination results communicate facts concerning the academic performance of Success students and the rigor of Success's program.

The speech is particularly meaningful because the underlying standard is independent. Success does not create or score the exams.

And there is no question that Success is a willing speaker. Success affirmatively wants the information disseminated to current and prospective families, colleges, educators, journalists, and the public. Moskowitz Decl. ¶¶ 6–10, 16.

The information therefore falls squarely within the First Amendment's protection.

### B. This Is Not a Claim for a Constitutional Right of Access to Government Data.

Defendant may invoke cases holding that the First Amendment generally does not require government affirmatively to provide access to information in its possession. *See, e.g., Los Angeles Police Department v. United Reporting Publishing Corp.*, 528 U.S. 32 (1999).

That principle has no application here.

Success does not seek access to information maintained by NYSED. It does not ask New York to create a database, produce records, or provide Success with government information.

The relevant information belongs to Success's own academic story and is maintained authoritatively by the College Board, a private testing organization. Success affirmatively authorizes the College Board to communicate it.

The governmental action challenged here is not a refusal to provide government information. It is the State's prohibition on a private intermediary transmitting an authorized communication between willing parties.

That is an ordinary First Amendment problem.

**C. New York Cannot Escape First Amendment Scrutiny by Directing Its Restriction at Success's Necessary Intermediary.**

Defendant may argue that Success remains free to announce its AP results itself.

That argument misunderstands the speech being burdened.

Success does not merely want to say, "Our AP results are excellent." It wants to communicate independently authenticated AP results to a recipient that requires independent authentication.

Success cannot substitute itself for the College Board because the independence of the source is part of the message's value.

The Supreme Court repeatedly has recognized that a restriction directed at a speaker's intermediary can burden the speaker's own First Amendment rights.

In *Meyer v. Grant*, 486 U.S. 414, 422–24 (1988), Colorado argued that initiative proponents remained free to speak for themselves even if prohibited from using paid petition circulators. The Supreme Court rejected that answer because government had removed an effective means by which the proponents communicated.

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67–72 (1963), similarly treated government pressure upon distributors as constitutionally significant because of its effect upon protected expression.

And in *National Rifle Association of America v. Vullo*, 602 U.S. 175 (2024), the Court reaffirmed the constitutional limits on using governmental authority over third parties in a manner that suppresses another speaker's protected expression.

Here the causal mechanism is especially straightforward. New York's refusal is the reason the College Board will not transmit the information.

The First Amendment does not permit the State to accomplish through control of Success's intermediary what it could not accomplish through a direct order that Success itself remain silent.

### D. The First Amendment Protects the Communication's Recipients as Well as Its Speaker.

The First Amendment protects both sides of a willing communication.

*Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 756–57 (1976), explains that where a willing speaker exists, constitutional protection extends to the communication, its source and its recipients.

Every component exists here.

Success wants to speak.

The College Board possesses and can authenticate the information.

U.S. News wants the relevant information.

Families and members of the public have an interest in receiving accurate school-performance information.

New York alone blocks the chain.

### E. NYSED's Restriction Warrants Heightened Scrutiny.

NYSED's prohibition does not apply indiscriminately to all data transfers. Its own explanation turns upon the nature of the information, the identity and purpose of the recipient, and the proposed use of the information in a commercial ranking product.

That resembles the speaker-, content-, and use-based distinctions examined in *Sorrell*, 564 U.S. at 563–66.

Success therefore submits that heightened scrutiny applies.

But this Court need not determine the precise level of scrutiny to grant relief because the prohibition cannot survive even the less demanding standard governing commercial speech.

### F. Student Privacy Does Not Justify Suppression of Aggregate, Non-Identifying Information.

Success agrees that student privacy is important.

But that legitimate interest cannot justify suppressing information that does not identify students.

Education Law § 2-d itself illustrates the distinction. It defines "student data" as "personally identifiable information from student records of an educational agency." N.Y. Educ. Law § 2-d(1)(i). Its protections repeatedly focus on students' personally identifiable information.

NYSED's own Chief Privacy Officer has likewise instructed educational agencies that the threshold question is whether personally identifiable information derived from education records is involved. If it is not, the Department's guidance states that Education Law § 2-d does not apply.

Here U.S. News says that it did not request individual student data at all. Powell Decl. ¶¶ 13–14 & Ex. D.

And Success's requested injunction expressly excludes personally identifying information.

If NYSED believes that some element of the College Board's underlying working file could permit identification of an individual student, that concern can be solved without suppressing the aggregate communication. Aggregation, de-identification, small-cell suppression or other safeguards can protect individual identities.

Indeed, U.S. News publicly stated that it remains willing to work with NYSED and the College Board on an appropriately safeguarded framework.

Privacy therefore cannot justify the categorical prohibition challenged here.

### G. NYSED's Public Website Is Not an Alternative Means of Making the Communication U.S. News Requires.

NYSED repeatedly emphasizes that AP information remains publicly available through the Department's website.

That does not solve the constitutional problem.

The relevant question is not whether NYSED publishes some AP information. It plainly does.

The question is whether NYSED makes available the particular complete, accurate and usable information U.S. News needs, in a form capable of replacing the College Board cohort dataset.

Defendant's own evidence answers no.

NYSED specifically asked the College Board whether its public data could meet U.S. News's needs. The College Board told NYSED they could not and explained that U.S. News uses a separate College Board cohort file—a "completely different data set." Powell Decl. ¶¶ 10–12 & Ex. C.

And NYSED itself identifies as a future task determining "why NYSED's publicly available AP data were insufficient for U.S. News & World Report's purposes." Powell Decl. ¶ 12 & Ex. C.

The government cannot eliminate an effective communication channel and then point to an alternative that the intended recipient cannot use for the relevant purpose. *See Meyer*, 486 U.S. at 424.

Nor would reconstructing numbers from State webpages solve the authentication problem. U.S. News relies on the College Board precisely because the College Board is the authoritative source of AP examination records.

The State thus has not merely made Success's preferred means of communication less convenient.

It has disabled the one means capable of making the particular authenticated communication U.S. News accepts.

### H. The IB Treatment Further Undermines the Claimed Need for a Categorical Prohibition.

U.S. News continued to calculate the relevant New York college-readiness measures using International Baccalaureate participation and performance information where available.

Success does not argue that IB accomplishments should be ignored. They should not.

The point is tailoring.

If aggregate externally administered advanced-examination information can appear in a public ranking when the examination is IB, it is difficult to maintain that protection of student privacy necessarily requires complete suppression when the examination is AP.

NYSED itself has recognized the apparent inconsistency and stated that it is investigating how IB information came to be used.

That does not itself establish a constitutional violation, but it further undermines any contention that categorical suppression of Success's aggregate AP information is necessary to protect student privacy.

### I. The Restriction Fails Even Under Central Hudson.

Even if the Court were to characterize the communication as commercial speech—a proposition Success does not concede—the prohibition still fails.

Under *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557, 566 (1980), truthful speech concerning lawful activity receives First Amendment protection, and the government must show a substantial interest, meaningful advancement of that interest and an appropriately tailored restriction.

The information here is truthful.

The underlying educational activity is lawful.

Student privacy is important, but preventing communication of aggregate non-identifying school performance does not meaningfully protect student identity.

And categorical suppression is far broader than necessary because identifiable information can be protected while aggregate information is transmitted.

The restriction therefore fails even intermediate scrutiny.

## IV. SUCCESS IS SUFFERING IRREPARABLE HARM.

The constitutional injury itself establishes irreparable harm.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

The Second Circuit has explained that where government action directly limits speech—as Success alleges here—the irreparable nature of the injury may be presumed. *Bronx Household*, 331 F.3d at 349–50.

The restriction operates today.

Every day New York prevents the College Board from transmitting Success's authorized AP information is another day in which Success cannot make the communication it wishes to make.

The practical injury is independently irreparable.

U.S. News's current ranking is public and accessible now. It presents Success without an academic measure that historically was significant to the ranking and that constitutes some of the strongest external evidence of Success students' advanced academic achievement.

Success cannot know which prospective family, student, educator, college, journalist, potential employee, donor or other member of the public encounters the incomplete profile. It cannot identify opportunities lost because of an impression formed from the ranking. And it cannot purchase a retrospective monetary remedy for those lost communications. Moskowitz Decl. ¶¶ 10–15.

The 2022 history also answers any suggestion that relief is necessarily pointless merely because this year's ranking has already appeared.

Powell's contemporaneous screenshots document how U.S. News displayed Success's ranking information during the 2022 episode, including a New York State ranking list displaying both

Success and another school at No. 26. Powell Decl. ¶¶ 6–8 & Exs. A–B. Based on that experience, Powell states that correcting the flow of AP information after publication can still produce a change to the information U.S. News presents publicly. Id. ¶ 9.

Success does not presently represent that U.S. News has made a binding commitment to revise the 2026 ranking.

But the 2022 experience demonstrates that post-publication relief can remain meaningful. That makes speed more important, not less. The longer incomplete information circulates, the greater the reputational injury and the less meaningful a later correction may become.

And even if U.S. News ultimately chose not to revise this year's ranking, Success's First Amendment injury remains. Success is entitled to communicate its authenticated information now and to be free from the same prohibition in future cycles.

## V. THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST FAVOR AN INJUNCTION.

The requested injunction imposes no legitimate hardship on the State.

Success does not seek student names, addresses, individual examination scores or other personally identifying information.

It does not ask New York to endorse U.S. News.

It does not ask New York to prepare information for U.S. News.

It does not ask this Court to dictate U.S. News's methodology or ranking.

It asks only that the State cease preventing the College Board from communicating Success's authorized aggregate AP information.

No monetary injury to New York results from that relief.

On the other side are continuing First Amendment injury and ongoing reputational consequences that cannot be compensated by damages.

The public interest likewise favors relief. The public benefits both from protection of student privacy and from the free flow of truthful educational information. Those interests are entirely compatible because Success seeks aggregate information that does not identify individual students.

## VI. IF THE RECORD IS COMPLETE, THE COURT SHOULD ADVANCE AND CONSOLIDATE THE MERITS PURSUANT TO RULE 65(a)(2).

Rule 65(a)(2) expressly permits a district court to advance the merits and consolidate trial with the preliminary-injunction hearing.

Success provides express notice through this motion that it requests such consolidation if the Court concludes, after Defendant responds, that the record is complete and the parties have had an adequate opportunity to present all material evidence.

*University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981), recognizes Rule 65(a)(2) as the mechanism for reaching the merits where appropriate, provided the parties receive adequate notice and opportunity to present their cases.

The Second Circuit similarly recognizes the district court's discretion to consolidate where those protections are satisfied. *Abraham Zion Corp. v. Lebow*, 761 F.2d 93, 101 (2d Cir. 1985).

The case is well suited for such treatment.

The essential historical facts are documentary.

NYSED has publicly explained what it did and why.

U.S. News has publicly explained what it requested.

the historical operation of the data-transmission process is supported by Powell's firsthand testimony and the 2022 U.S. News screenshots.

The central dispute is legal.

If Defendant identifies a genuine material factual dispute—for example, concerning whether some particular proposed data field could identify an individual student—the Court can permit limited discovery or evidence directed to that issue.

But an abstract assertion that Defendant would like more discovery should not delay adjudication of an ongoing constitutional restriction.

For purposes of the preliminary injunction itself, the Court also is not confined to evidence that would necessarily be admissible at a final trial. The Second Circuit has expressly held that hearsay may be considered in determining whether preliminary injunctive relief should issue. *Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir. 2010).

If the Court elects to consolidate the merits, Success is prepared to establish any disputed authenticity or evidentiary foundation through stipulation, supplemental declaration or live testimony as the Court directs.

## VII. NO BOND SHOULD BE REQUIRED.

Rule 65(c) gives the Court broad discretion concerning security.

The Second Circuit has held that the Court may dispense with a bond where the enjoined party has shown no likelihood of monetary injury. *Doctor's Associates, Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996).

There is no plausible monetary harm to Defendant from an injunction preventing NYSED from blocking the College Board's transmission of aggregate AP information.

No bond should therefore be required, or alternatively the Court should require only nominal security.

## CONCLUSION

Plaintiff respectfully requests that the Court:

1. preliminarily enjoin Defendant, her officers, employees, agents, successors and persons acting in concert with her from enforcing or maintaining any policy, directive, interpretation, refusal, contractual restriction or other prohibition that prevents the College Board, at Success Academy's request and with Success Academy's authorization, from transmitting Success Academy's aggregate,

non-personally-identifying school-level AP participation and performance information to U.S. News & World Report;

2. direct Defendant promptly to notify the College Board and U.S. News that New York does not prohibit the College Board from making that transmission;

3. provide expressly that nothing in the injunction requires transmission of personally identifiable student information or directs U.S. News whether or how to use, weigh, publish or act upon the information;

4. dispense with security under Rule 65(c), or require only nominal security;

5. pursuant to Rule 65(a)(2), advance and consolidate the merits with the preliminary-injunction proceedings if, after Defendant has received notice and a full opportunity to present material evidence, the Court concludes that the record is complete; and

6. grant such other and further relief as the Court deems appropriate.

Dated: New York, New York
September 16, 2026

LAW OFFICES OF ERIC J. GRANNIS

By: ___________/s/___________.

Eric J. Grannis

11 Broadway, Suite 615
New York, New York 10004
(212) 903-1025
egrannis@grannislaw.com

Attorney for Plaintiff