UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SUCCESS ACADEMY CHARTER SCHOOLS-NYC,

Plaintiff,

-v-

BETTY A. ROSA, *in her official capacity as Commissioner of Education of the State of New York and President of the University of the State of New York*,

Defendant.

26-CV-7298 (JMF)

MEMORANDUM OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

Plaintiff Success Academy Charter Schools-NYC ("Success Academy") is an educational corporation that operates Success Academy High School of the Liberal Arts, among other public charter schools. *See* ECF No. 1 ("Compl."), at ¶ 23. It brings this action against Betty A. Rosa, Commissioner of Education of the State of New York ("Commissioner Rosa"), alleging that her refusal to authorize release of Advanced Placement ("AP") exam results in New York schools to *U.S. News & World Report* ("*U.S. News*") infringes on Success Academy's First Amendment Rights. *See id.* ¶¶ 19, 24, 85-110. Several weeks after filing this action, Success Academy moved for preliminary injunctive relief directing Commissioner Rosa to authorize the College Board, a nonprofit that administers AP testing, to release New York's records to *U.S. News*. *See* ECF No. 13 ("Pl.'s Mem."), at 21-22; ECF No. 22 ("Pl.'s Reply and Opp'n"), at 20-21. Thereafter, Commissioner Rosa cross-moved, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, to dismiss Success Academy's Complaint. *See* ECF Nos. 20-21.

Upon review of the parties' submissions, the Court concludes that Success Academy lacks Article III standing to bring its claims both because Commissioner Rosa is not the cause of

its alleged harms and its alleged harms would not be redressable by a favorable decision. Accordingly, and for the reasons that follow, the Court GRANTS Commissioner Rosa's motion to dismiss and DENIES as moot Success Academy's motion for a preliminary injunction.

**BACKGROUND**

The following facts, drawn from the Complaint, are presumed to be true for purposes of this motion. *See, e.g.*, *Karmely v. Wertheimer*, 737 F.3d 197, 199 (2d Cir. 2013). Success Academy operates a high school with a rigorous and expansive AP program. *See* Compl. ¶ 4. AP classes, developed and administered by an independent entity called the College Board, demand that students engage in "challenging, college-level academic work" culminating in national, standardized exams. *Id.* ¶¶ 3-6. Success Academy boasts about its students' success on AP exams which, it urges, is "among the most objective and compelling evidence of the rigor of Success Academy's high-school program and of its students' readiness for college." *Id.* ¶ 7.

To communicate its students' achievements in this respect, Success Academy has for years relied in part on *U.S. News*. *Id.* ¶¶ 9, 14, 41-43. Every year, *U.S. News* publishes rankings of American high schools based on a variety of data, including AP exam results. *Id.* ¶¶ 41-43. *U.S. News* solicits data on a school's AP scores from the College Board. *Id.* ¶¶ 44-45, 49. The College Board, in turn, requests each state's authorization to release this data to *U.S. News*. *Id.* ¶ 49. For the 2026 ranking cycle, Commissioner Rosa, on behalf of the New York State Education Department ("NYSED"), declined the College Board's request to authorize release of New York's high school AP data to *U.S. News*. *Id.* As a result, *U.S. News* relied on other data to assess New York students' college readiness. *Id.* In the 2026 rankings, Success Academy's position among New York State high schools fell from 11th to 196th place. *Id.* ¶¶ 14-16.

On August 27, 2026, just weeks after *U.S. News* published these rankings, Success Academy filed this action against Commissioner Rosa. *See* Compl. It asserts a single claim, pursuant to 42 U.S.C. § 1983, that Commissioner Rosa violated Success Academy's First Amendment rights by obstructing the College Board's dissemination of Success Academy's students' AP exam results. *See id.* ¶¶ 85-110.

**DISCUSSION**

Commissioner Rosa moves to dismiss Success Academy's Complaint both for lack of subject-matter jurisdiction and failure to state a claim. *See* ECF No. 21 ("Def.'s Mem. and Opp'n"). The Court begins, as it must, with the former. *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

Article III of the Constitution restricts the "judicial Power" of the United States to "Cases" and "Controversies." U.S. Const. art. III, § 2. In light of that restriction, the Supreme Court has held that a plaintiff must have "standing" to sue. *See, e.g.*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). It is well established that "the irreducible constitutional minimum of standing contains three elements": (1) injury in fact, (2) causation, and (3) redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (cleaned up). The element of causation requires that the injury be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* (cleaned up). That does not mean that a plaintiff needs to show "that the defendant's actions are the very last step in the chain of causation." *Walden v. Kosinski*, 153 F.4th 118, 131 (2d Cir. 2025) (internal quotation marks omitted). When an injury results not from defendant's acts, but from

"independent decisions of a third party," however, "the chain of causation between the plaintiff['s] injury and the challenged Government action" is broken. *Banco San Juan Internacional, Inc. v. Fed. Rsrv. Bank of New York*, 176 F.4th 163, 184 (2d Cir. 2026) (internal quotation marks omitted). Finally, to establish redressability, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (internal quotation marks omitted). Each element of the plaintiff's standing "must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation." *Id*. At the pleading stage, as here, a plaintiff must "clearly . . . allege facts demonstrating" each element. *Banco San Juan*, 176 F.4th at 184 (cleaned up).

Success Academy fails to carry its burden here, for two reasons. First, Success Academy fails to plausibly allege causation because its asserted reputational injuries stem principally from the actions of a "third party not before the [C]ourt," namely *U.S. News*. *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 42 (1976). Indeed, several "independent decisions" of *U.S. News* "break the chain of causation" connecting Commissioner Rosa's acts to Success Academy's injury. *Allen v. Wright*, 468 U.S. 737, 759 (1984). It was *U.S. News* that decided to relegate Success Academy in its 2026 rankings. Compl. ¶ 14-15. And even assuming that decision was motivated exclusively by the unavailability of AP score data, it was *U.S. News* that decided whether and how to fill that void. *See id.* ¶ 11. And by Success Academy's own admission, it was *U.S. News* that refused to credit the "school's own self-reporting" of AP score data and mandated that "AP information used in its rankings come from an authoritative independent source" — *i.e.,* the College Board, acting with the permission of New York State. *See id.* ¶ 89.

Perhaps recognizing this standing problem, Success Academy tries to recast its injury as an expressive one and insists that Commissioner Rosa "prevented Success Academy from

communicating its AP examination results" to *U.S. News*. *See* Compl. ¶ 91. Citing *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67–71 (1963), and *National Rifle Association of America v. Vullo*, 602 U.S. 175, 190 (2024), Success Academy argues that, by failing to greenlight College Board's AP data transfer to *U.S. News*, Commissioner Rosa "coerc[ed] private parties to suppress [Success Academy's] protected speech." Pl.'s Reply and Opp'n 10 (internal quotation marks omitted); *see* Compl. ¶ 93-94. But these arguments are belied by the Complaint itself. Nowhere does Success Academy allege that Commissioner Rosa or the NYSED barred Success Academy from publishing its AP data. To the contrary, the Complaint acknowledges that Success Academy possesses, and is free to communicate, its students' AP score information. *Id.* ¶¶ 45-47, 89, 101. The gravamen of Success Academy's claim is that *U.S. News* credits the information only if it comes from "an independent third-party verifier" — here, an entity (the College Board) that will not transfer data without the permission of the NYSED. *Id.* ¶ 9. Commissioner Rosa has simply denied College Board authorization to transfer data, conduct far afield of "selective[ly] suppress[ing]" Success Academy's speech or manufacturing a "government-created information blockade." *Id.* ¶¶ 17, 64. That Commissioner Rosa has *some* relationship to the absence of AP data from the *U.S. News* evaluation of New York schools does not render Success Academy's alleged injury traceable to her conduct.

Second, and relatedly, Success Academy fails to plausibly allege redressability. *See, e.g.*, *Neurological Surgery Prac. of Long Island, PLLC v. U.S. Dep't of Health & Hum. Servs.*, 145 F.4th 212, 227 (2d Cir. 2025) (observing that traceability and redressability are often regarded as "flip sides of the same coin"). Success Academy asserts that, since "students at Success Academy did even better on their AP exams [in 2026 compared to] prior years," and there was no "collapse in Success Academy's academic performance," the ranking change can only be

explained by the absence of AP data. Compl. ¶ 16. But absent allegations about the *U.S. News* ranking methodology, this observation is purely conclusory and so fails to "connect" Success Academy's alleged "injury to the challenged actions." *Zanotti v. Invention Submission Corp.*, No. 18-CV-5893 (NSR), 2020 WL 2857304, at *8 (S.D.N.Y. June 2, 2020) (cleaned up); *see Malinowski v. I.B.M. Corp.*, No. 23-CV-8421 (NSR), 2025 WL 965812, at *4 (S.D.N.Y. Mar. 31, 2025) ("Courts in this Circuit have repeatedly stressed that when discerning whether a causal connection exists, correlation is not tantamount to causation, and, without more than mere correlation, a causal relationship cannot be established."); *see also, e.g.*, *DeLeon v. Dunaway*, No. 22-CV-6039 (NSR), 2022 WL 3902734, at *3 (S.D.N.Y. Aug. 30, 2022) ("[P]laintiff cannot establish standing simply by resting on conclusory allegations in the complaint."). Put differently, based on the allegations in the Complaint, it is no more than "speculative" that requiring Commissioner Rosa to authorize the College Board's release of AP scores to *U.S. News* would improve Success Academy's ranking and cure its alleged reputational harm. *See Lujan*, 504 U.S. at 560-61. In short, because of the disconnect between the reputational injury Success Academy asserts and the relief it seeks — and, in particular, the *entity* from which it seeks that relief — the Court concludes Success Academy lacks standing.

**CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss for lack of subject-matter jurisdiction is GRANTED, and Success Academy's Complaint is dismissed in its entirety without prejudice. *See Green v. Dep't of Educ.*, 16 F.4th 1070, 1074 (2d Cir. 2021) ("[D]ismissals for lack of subject matter jurisdiction must be without prejudice, rather than with prejudice." (internal quotation marks omitted)). The Court need not and does not consider

Defendant's other arguments for dismissal. Nor need the Court consider Success Academy's motion for a preliminary injunction, which is DENIED as moot.

The Clerk of Court is directed to terminate ECF Nos. 12 and 20, to enter judgment consistent with this Memorandum Opinion and Order, and to close the case.

SO ORDERED.

Dated: November 10, 2026
New York, New York

JESSE M. FURMAN
United States District Judge